76086-CV
AMD
Amended
528

No. 76066-CV

| | § | |
|---|---|---|
| INRE: DORA ANN BURNETT, ET AL. PLAINTIFF; | § | BRAZORIA COUNTY, TEXAS |
| | § | |
| | § | |
| | § | |
| AND | § | IN THE DISTRICT COURT |
| | § | |
| PARTY WITH INTEREST | § | |
| | § | |
| MEDICARE, | § | 149th JUDICIAL DISTRICT |
| SECONDARY PAYER ACT | § | |

§
§
§
§

VS.

ConocoPhillips;
Chevron Phillips Chemical Company LP;
Chevron Phillips Chemical Company LLC;
Chevron Phillips Chemical Company;
Phillips Petroleum Co.; Phillips Chemical
Company; Phillips 66 Company; Pacific
Employers Insurance Company; ACE
U.S.A;
ACE American Insurance Company;
ESIS U.S.A.; ESIS, AETNA U.S. Health
Care; Aetna Life Insurance Company;
Benefit Concepts; MetLife, Metropolitan
Life Insurance; ACE Property and Casualty
 Insurance Company and Affiliated Insurers;
Oil Company Insurance Limited (OCIL) of
Bermuda; SONIA GODINEZ, Adjuster;
CRAWFORD & COMPANY; LINDA
GOIDNA, Benefit Assistant; DEARBORN
NATIONAL;  TPCIGA;
DAVID HEINSOHN, Benefit Plan
Administrator of Chevron Phillips
Chemical Company LP; VIRGINIA
HUBBARD of Human Resource for
Chevron Phillips Chemical Company LP;
MYKE CAPPS of Human Resources

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

1

11313

EXHIBIT 1
TO OCIL'S NOTICE OF REMOVAL

Chevron Phillips Chemical Company LP;      §
LISA LAURIN, HR Manager Chevron            §
Phillips Chemical Company LP;              §
SHEILA FELDMAN, HR Manager                 §
Conoco Phillips Company; TIM KIEHI,        §
Plan Administrator Conoco Phillips         §
Company; JAMES MULVA previous              §
President and CEO ConocoPhillips, et al;   §
RYAN LANCE Current President/CEO           §
Conoco Phillips Chemical Company LP;       §
PETER CELLA Chevron Phillips President     §
and CEO; and all present and past BOARD    §
OF DIRECTORS of ConocoPhillips, et al;     §
CHARLES COVERT, MD.; CHERYL                §
HARTMAN, USW Local 13-227;                 §
JIMMY EASTER, USW LOCAL 13-227;            §
JIM LEFON, International Representative;    §
JOHN MICKEY BREAUX, Union                  §
Director and DANIELLE SANTORI,             §
Corporate Compliance Chevron Phillips and §
SAVANNA SAM, Employee Relations            §
Conoco Inc.                                §

## PLANTIFF FIRST AMENDED PETITION

COMES NOW, DORA ANN BURNETT a natural person in proper person sui juris, for DORA ANN BURNETT, the person named in the complaint hereafter plaintiff, in complaint of a violation of civil rights for DORA ANN BURNETT under the provisions of state and federal constitutions guaranteeing civil rights protections under Texas Labor Code and the American With Disabilities Act (ADA) under an alleged policy of insurance not in evidence as being documented or filed in Texas.

This complaint of civil rights violations is filed under the provisions of Texas Labor Code Chapter 407A. Violations as the defendants have presented no evidence of a policy or a certified contract of insurance for defendants employing entities. Texas Labor Code section 407.023, 407.024(a)(b) ,407.061 et seq. And Texas Insurance Code 804.107.(b)(1)(3),Texas Labor Code 419.003  requires in related parts,  any complaint filed in District Court on any insurance company without certified policies, contracts, or service agreements filed in Texas under the Texas Insurance Code with the Texas Department of Insurance but does business in Texas absent the required filings, the Commissioner of Texas Department of Insurance is unequivocally determined to be the attorney for the offending insurance company and at Section 407.024(a) termed the agent for service in any filed complaint. Ms. Judith Rathgeber, Commissioner of Texas Department of Insurance being that legislated person is thus named as the served party in the complaint.

2

Further, as the defendants doing business in Texas, in their insurance statuses, are alleged to have operated in violation of the Texas Business and Commerce Code at Section 15.005 and thus a copy of this complaint is forwarded to the Office of the Attorney General of Texas to the attention of Attorney General Greg Abbott as allowed by statute at section 15.21(a)(1).

For DORA ANN BURNETT, it is alleged that ConocoPhillips, Chevron Phillips Chemical Company LP, Chevron Phillips Chemical Company LLC, Chevron Phillips Chemical Company, Phillips Chemical Company. Phillips Petroleum Co. Phillips Building, Phillips 66 Company, Pacific Employers Insurance Company, ACE U.S.A., ACE American Insurance Company, ESIS U.S.A., ESIS, AETNA U.S. HealthCare, Aetna Insurance Company, Benefit Concepts, TPCIGA, MetLife, Metropolitan Life Insurance, and ACE Property  and Casualty Insurance Company and Affiliated Insurers, Oil Company Insurance Limited (OCIL) of Bermuda, Crawford & Company, Dearborn National, and CHARLES COVERT, MD; CHERYL HARTMAM, USW Local 13-227, JIMMY EASTER USW Local 13-227, JIM LEFON International Representative;

Hereafter defendants, by their actions as a process of doing business in Texas it is alleged the defendants' collective actions caused DORA ANN BURNETT to lose and unwittingly give up certain civil rights guaranteed under Texas and U.S. Constitutions by the deceptive actions of the defendants in doing business in violation of Texas law.

## I.    DISCOVERY CONTROL PLAN

The Plaintiff pleads that the discovery should be conducted in accordance with a discovery control plan under Civil Procedure Rule 190.3.ALL RIGHTS AND LIBERTIES RESEVED.

## II.    PARTIES

Plaintiff currently resides in Brazoria County at registered address 3607 Lauren Trail Pearland TX, 77581 and was a resident of Harris County Texas at time of incident.

Defendant(s) are Texas Corporations, doing business under the laws of the State of Texas and licensed to do business in the State of Texas for the purpose of writing insurance, including Worker's Compensation insurance for the purpose of accumulating monetary profit, and may be served with service of process upon its registered agent for service as addressed below or the Texas Commission of Insurance, 333 Guadalupe, Austin, TX 78701 as agent for the insurance companies listed below pursuant to Texas Insurance Code Chapter 804, Subchapter B section 804.103(c)(1) and 407.024:

ConocoPhillips 600 Dairy Ashford, Houston TX 77079;
Chevron Phillips Chemical Company LP, 10001 Six Pines, Woodlands, TX 77380;
Chevron Phillips Chemical Company LLC, 10001 Six Pines, Woodlands, TX 77380;
Chevron Phillips Chemical Company, 10001 Six Pines, Woodlands, TX 77380;
Phillips Petroleum Co Phillips Building, Bartlesville, OK 74004;
Phillips Chemical Company 10001 Six Pines, Woodlands, TX 77380;
Phillips 66 Company PO BOX 4428, Houston TX 77210;

3

Pacific Employers Insurance Company PO Box 65693, Scranton PA 18505-65693;

ACE U.S.A. PO Box 6569, Scranton PA 18505-6569;

ACE American Insurance Company PO Box 6569, Scranton PA 18505-6569;

ESIS U.S.A. PO Box 6569, Scranton PA 18505-6569,

ESIS PO Box 6569, Scranton PA 18505-6569

AETNA U.S. Health Care PO Box 1460 Portland, OR 97207;

Aetna Life Insurance Company PO Box 14094, Lexington KY 40512-4094;

Benefit Concepts PO Box 246, Barrington, RI 02806-0246;

MetLife Metropolitan Life Insurance PO Box 14590 Lexington KY 40511-4590;

ACE Property Casualty Insurance Company and affiliated insurers 436 Walnut Street, Philadelphia, PA 19106;

Oil Company Insurance Limited (OCIL) of Bermuda;

DEARBORN NATIONAL PO Box 9738, Portland Maine 04104-5056;

TPCIGA 9120 Burnet Rd Austin Tx, 78758-5204

CRAWFORD & COMPANY 2450 Severn Avenue, Suite 500, Metairie, LA 70001;

SONIA GODINEZ aka SONIA RUIZ Adjuster for ESIS, Pacific Employers Insurance Company, and ESIS USA PO BOX 6569, Scranton PA 18505-6569;

DAVID HEINSOHN, Benefit Plan Administrator of Chevron Phillips Chemical Company LP, 10001 Six Pines Drive, Suite 7062A Woodlands, TX 77380;

VIRGINIA HUBBARD of Human Resource for Chevron Phillips Chemical Company LP, 1400 Jefferson Road, Pasadena, TX 77506;

MYKE CAPPS of Human Resources for Chevron Phillips Chemical Company LP, 10001 Six Pines Drive, Suite 7062A, Woodlands, TX 77380;

LISA LAURIN HR Manager for Chevron Phillips Chemical Company LP, 1400 Jefferson Road, Pasadena, TX 77506;

TIM KIEHL, Plan Administrator Conoco Phillips Company 149M Plaza Office Building, Bartlesville OK 74004;

JAMES MULVA past president and CEO of ConocoPhillips, et al. for all past and present CEO's for ConocoPhillips, et.al. 600 Dairy Ashford, Houston, TX 77079;

PETER CELLA, Current President of Chevron Phillips Chemical Company LP 10001 Six Pines Drive, The Woodlands, TX 77380;

SHEILA FELDMAN, HR Director 149 M Plaza Office Building, Bartlesville, OK 74004;

BOARD OF DIRECTORS ConocoPhillips, et al. 600 Dairy Ashford, Houston, TX 77079;

CHARLES COVERT, MD 800 Bering Drive, Suite 305, Houston TX 77057;

CHERYL HARTMAN USW Local 13-227 704 East Pasadena Freeway, Pasadena TX 77506;

JIMMY EASTON USW Local 13-227 704 East Pasadena Freeway, Pasadena TX 77506;

SAVANNA SIM, Employee Relations Conoco Inc., 600 Dairy Ashford, Suite MC3090, Houston TX 77079;

JOHN MICKEY BREAUX, Director, USW District 13-227, 1300 Rollingbrook Drive, St 504, Baytown, TX 77521;

JIMMY LEFON, International Representative USW District 13-227 1300 Rollingbrook Drive, St 504, Baytown TX 77521

DANIELLE SANTORI Corporate Compliance Chevron Phillips 10001 Six Pines Drive, Woodlands TX 77380;

### III. VENUE AND JURISDICTION

Venue is proper as the greater majority of the alleged violations of law related to this complaint of civil rights violation occurred in the county of Harris, in Texas under Tex. BC Code 15.21(a)(1), 15.005, Tex. Lab. Code 407.023, 407.024(a), 407.061 et seq., 15 USC 15c(2), 28 TAC 791, 28 TAC 4151, 28 TAC 7 et seq. (as adopted), and under the Texas Workers Compensation Act. Whereas many federal violations are asserted no claim for redress in this suit under Federal law is claimed in this petition however all rights are reserved by reference here as maintained by DORA ANN BURNETT a natural person 15 USC 15c (2) and resident of Brazoria County residing thirty miles from location of incident.

PLAINTIFF'S injury/exposure was determined to be permanent under Texas law at Tex. Lab. Code Title 2 Subtitle A Chapter 21 Subchapter A at Section 21.0021()(1 and 2)(b)(1-5). The Statute requires notice to the Texas Attorney General at Section 21.003(a)(1-5) as the plaintiff's claim was referred to state and federal social welfare programs through the fraudulent process under 28 TAC 791 causing Texas and U.S. Governments' agencies to be in violation of Subchapter B Section 21.052(1) by processing plaintiff's claims without proper reporting under the Medicare Secondary Payer Act which should have maintained plaintiff's claims in Texas under Texas law except for this fraudulent process. [See Saenz vs. Fidelity & Guaranty Insurance Underwriters, 925 S.W.2D 607 (Tex. 1996)] and [see American Motorist Ins. Co. vs. Fodge, 63 S.W.3d 801 (Tex. 2001)]

Further violations occurred in law under Texas jurisdiction at Tex. Lab. Code Title 2 Subtitle A Chapter 21 Subchapter B Section 21.051(1) and (2) as the employer, insurer, and union defendants used the EXEMPT employee defendants to produce and cause to be produced false and deceptive documents that was then used as official and true records in state and federal agencies and social programs and withheld documents from state and federal agencies all the while the defendants collectively knew and/or should have known that these records had been produced and/or withheld in violation of Texas law such as the Texas Penal Code section 39.01(1-2) which these defendants had been granted access to the plaintiff's private and protected personal information through Texas licensing bureaus and defendants proceeded to violate their oaths to at lawfully requiring notice in Texas at Tex. Pen. Code section 39.015. [See Gonzalez vs. Cigna Ins. Co. of Tex., 924 S.W.2d 183, 184-87 (Tex. App.-San Antonio 1996, writ denied)].

This Court has jurisdiction over this suit under Section 25.003 of the Government Code, regardless of the amount in controversy.

The insurance company defendants, insurance employee defendants, the employer entity defendants, the employer EXEMPT employee defendants, and the associated employee representative defendants violated Tex. Lab. Code 402.083 and Tex. Lab. Code 402.091 in their collective failure under their licenses and or fiduciary duties in their employment statuses to protect confidential records and documents related to the plaintiff's injury/exposure claims and employment and failed to maintained those same files in a truthful and factual status for reporting to and administrating plaintiff's claim files for

Texas agencies for proper reporting by Texas to federal agencies as would be required under the provisions under 28 TAC 791.

Such authorizing statutes generally have been held to encompass or codify the requirements of constitutional standing. See Hooks v. Texas Dep't of Water Resources, 611 S.W.2d 417, 419 (Tex.1981); Lake Transport, Inc. v. Railroad Comm'n, 505 S.W.2d 781, 785

The Texas Open Courts provision contemplates access to the courts only for those suffering an injury: "All courts shall be open and every person for an injury done her ... shall have remedy by due course of law." Tex. Const. art. I, § 13 (emphasis added); see Texas Ass'n of Business, 852 S.W.2d at 444. To establish standing, one must show a justifiable interest, which requires that one allege actual or imminent threat of injury peculiar to one's circumstances and not suffered by the public generally. Texas Rivers Protection Ass'n v. Texas Natural Resource Conservation Comm'n, 910 S.W.2d 147, 151 (Tex.App.-Austin 1995, writ denied) (riparian ownership distinguished litigant's injury from that of public at large). The injury may be economic, recreational, or environmental. City of Bells v. Greater Texoma Util. Auth., 790 S.W.2d 6, 11 (Tex. App.-Dallas 1990, writ denied). A plaintiff must plead facts that affirmatively demonstrate standing; that is, the plaintiff must affirmatively show jurisdiction. See Texas Ass'n of Business, 852 S.W.2d at 446.

## IV.    FACTUAL BACKGROUND

This suit is necessary to collect a legal debt and damages due and owing to Plaintiff Because of Defendant's wrongful act of handling plaintiff claim for an on the job injury for which workers compensation benefits were disputed.

Plaintiff, a loyal and hardworking employee for Phillips Petroleum Company, ("Phillips") was injured while working on March 27, 2000 explosion fire. Plaintiff was injured while working on premises for Phillips in Harris County, Texas. The injury arose out of and in the course of Plaintiff's employment as a hopper car technician for Phillips. At the time of the injury, the Plaintiff was subject to the Worker's Compensation Act. Defendant(s) are the Worker's Compensation insurance carrier(s) for the Plaintiff's employer, Phillips, on the date of the injury.

Plaintiff's injury resulted in her actions of jumping from a Twenty-five (25 ft.) platform when the explosion occurred. Her injuries included but are not limited to neck, lower back, and right knee.

Unfortunately, Defendant's delay and imposition of severe economic distress has caused Plaintiff to be subject to significant economic impact, worry, distress and continuing economic and physical damage. In addition, Plaintiff has suffered financial harm and damage to her credit as a result of Defendant's denial and repeated delays.

The Multi-employer Pension Plan Amendment Act of 1980 ("MPPAA") amended the Employee Retirement Income Security Act of 1974 ("MPPAA"), to impose liability for a share of the unfunded vested benefits of multi-employer defined benefit pension plans on employers who

6

withdraw from such plans. MPPAA was amended by the Pension Protection Act of 2006 ("PPA").

## V.    CAUSE OF ACTION

Plaintiff timely filed both a notice of injury with Employers and Insured Company claim for benefits with the division of Worker's Compensation in the Texas Department of Insurance ("division").March 27, 2000.

Plaintiff has exhausted all administrative remedies and is aggrieved by the defendant's actions.

Plaintiff filed suits in the Harris County District Court under the following Tex. Lab. Code suits number 14-12-01007-CV. This suit was filed based on fraudulent documents, records and false statement of the employers, insurers, and agents acting as administrators only from a foreign jurisdiction under a foreign trust OCIL as referenced in the defendant's Memorandum of Law and Affidavit provided in Exhibit 1, pages (6) and included herein by reference in its entirety. Plaintiff respectfully request the court to extend the doctrine of comity in considering this complaint as the issues involve the same injuries/exposures the defendant have two statuses in law, foreign and domestic, the foreign status before this court in this complaint. The above mentioned Defendant's have discriminated against Plaintiff in therefore resulting in violation of Plaintiff Civil Rights.

Even after the Attorney General entered an informal opinion into District Court in Pacific Employers Insurance Company  vs. O'Brien in exhibit 2, pages (14) included herein in its entirety by reference the defendants continued to administer the claim in this complaint from foreign jurisdictions using forms such as the UAB form exhibit 3, pages (2) included herein by reference, while knowing since as early as 1995 that the asserted civil rights violations and other violations would be evidenced if the asserted actions occurred as a business practice to Texas citizens under Texas laws and Constitution as opinioned by exhibit 4, pages (8) Texas Attorney General Opinion DM-326, 1995 included in its entirety herein by reference. Medicare Secondary Payer ACT of Notice exhibit 5, pages (3)

Having being made aware of the civil rights violations and of the other related laws in the alleged practice of business by the defendants as early as 1995 then it would be reasonable to determine and allege a conscience decision was made to act thus and plaintiff alleges the following:

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, took funds from the U.S Treasury through the political subdivision process at 28 TAC 791 through coerced thus unlawful claims under Medicare and Social Security Administration which were not appropriated by the Congress of the United States, and went unreported as required under the Medicare Secondary Payer Act; and

7

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, have unlawfully taken as much as and possibly over $5 trillion from the U.S. Government in the years 1975 to present, the said unlawful taking consisting of the unlawful creation of claims against the U.S. Treasury to the extent of millions of dollars in the years 1975 to present; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally committed similar thefts committed in 1998, 1999, and 2000 and in years previous to 1998, amounting to millions of dollars in explosions and fires with chemical release claims; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, have unlawfully created claims against the U.S. Treasury by unlawfully placing Texas and U.S. Government credit, in the employee's corporate names, in specific amounts to the credit of foreign governments and foreign banks of issue, private interests and commercial and private banks of the U.S. and foreign countries, and branches of foreign banks doing business in the U.S and Texas., to the extent of billions of dollars; and with having made unlawful contracts in the name of the U.S. Government and Texas and the U.S. Treasury; and with having made false entries on books of account; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, have taken Fed Notes from the U.S. Treasury by using unregistered securities, namely the Unavoidable Absence Benefit Plan Form No. 13774-N in violation of the Homeland Security Act at Section 1320 Reporting of Claims, and with having put Fed Notes into circulation by repatriating the unlawfully accumulated funds as pay bonuses for the EXEMPT employees from banks without obeying the mandatory provision of the Treasury Act and Texas law through 28 TAC 791 which requires the Treasury to fix an interest rate on all issues of Securities and monies supplied to banks through "political subdivisions" as well as Edge Law banks, the interest resulting there from to be paid by the violators back to the governments of Texas and the U.S. for the use for and the responsibility of the retiring of the public debt; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, have come to a meeting of the minds to commit fraud upon Texas and the U.S. Government and the people of Texas and the U.S. of billions of dollars by the commission of these act in violation; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, have used U.S. Government securities, such as, the corporate names of the injured/exposed employees, and with use of the U.S. Government credit then unlawfully created and taken and with having then transferred back to the public unlawful debt created in Bermuda resulting from said U.S. Government securities, namely the UAB Forms with three U.S. persons' signatures secured, back to the people of Texas and the U.S. by presenting U.S. notes as lawful bonuses back to the U.S. Treasury for credit as lawful pay and bonuses and dividend reimbursements when the foreign banks should have transferred actual gold or gold values back to the U.S. as the U.S. have no financial treaty with Bermuda and the foreign bank of transfer could only do lawful transfers in gold under U.S. Treasury law and with having again deposited and co-mingled these monies in U.S. banks with lawful company monies and securities with the then U.S. Government credit unlawfully taken as dividends, pay and bonus knowing that the dividends, pay and bonuses should have passed through the political subdivision at 28 TAC 791 as required by law and then to the injured/exposed employees as benefits, compensation, medical treatment costs,

and the retiring of the public debt by paying back social benefits unnecessarily paid by Texas and the U.S. under social welfare programs. Then, having again transferred the employers' and insurers' liabilities from the claims back to the people of Texas and the U.S. Government by exchanging U.S. securities not for gold or gold values but a security of no value from Bermuda, namely the UAB Form; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, defrauded Texas and the U.S. Government and the people of Texas the people of the U.S. by this rotary process; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, unlawfully negotiated U.S. Government securities upon which the U.S. Government and Texas liability was unlawfully conveyed, and used as collateral security for foreign credit and with having substituted such securities, namely the UAB Form, for gold, in Bermuda, which was being held as collateral security in Bermuda banks as unallocated claim monies from the injured/exposed employees for pay and bonuses to EXEMPT employees and dividend reimbursements to the insurers, and with having by the process defrauded Texas and the U.S. Government and the people of Texas and the people of the U.S. as the accumulated monies held in account lawfully belonged to the U.S. Government and Texas under 28 TAC 791 as reimbursements; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, committed the theft of all the gold and U.S. currency due as pay, medical treatment cost, and compensation from the injured/exposed employees the defendants obtained by this process; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally,, unlawfully issued the unregistered UAB Forms as pay in the U.S. on false, worthless and fictitious acceptances and other circulating evidence of debt, and with having made unlawful advances of U.S. currency based on the UAB Form as credit, and with having unlawfully permitted renewals of acceptances and renewals of other circulating evidences of debt and credit related to the injured/exposed employees' claims, and with having permitted acceptance bankers and discount dealer corporations, insurance companies, Edge Law banks and other private bankers to violate the banking laws of the U.S. and the Texas Constitutions; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, conspired to have evidences of debt to the extent of trillions of dollars artificially created and maintained in Bermuda outside Texas and U.S. jurisdiction through this process from as early as 1975 to the present, and with having made unlawful issues and advances of U.S. currency on the security of said artificially created evidences of debt in Texas and the U.S. for a sinister purpose, and with having assisted in the execution of said sinister purpose in the defendants' employment duties and fiduciary duties under Texas and U.S. laws in violation there of Texas and U.S. laws; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, brought about the repudiation of the U.S. currency obligations of the U.S. Banks to the people of Texas and the people of the U.S. and with having conspired to obtain a release from Texas and the U.S. under Medicare and Social Security Agencies from their contractual liability to pay claims for injured/exposed employees at 28 TAC 791 in Texas and the U.S. and to redeem all

9

U.S. currency in gold from non-treaty countries or lawful money at the U.S. Bank and with having defrauded the holders of U.S. currency or debt lawfully owed to the injured/exposed employees, and not paid to date , and with having conspired to have the debts, liabilities and losses of the employer entities, the insurers and foreign persons unlawfully transferred to Texas and the U.S. Government and the people of Texas and the people of the U.S.; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, unlawfully substituted U.S. currency for an irredeemable paper currency, namely the UAB Form, for gold in Bermuda and placing useless securities in the hands of the people of Texas and the people of the U.S. after the decision to repudiate the U.S. currency and the national currency claims of the injured/exposed employees was made known to them, and with thus having obtained money under false pretenses and withheld lawful pay, medical treatment, and compensation from the injured/exposed employees for their claims for (13) thirteen years and more years; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, brought about a repudiation of the notes of the U.S. required as pay and compensation to the injured/exposed employees in order that the gold value of the said Bermuda currency might be given to private interests, foreign governments, foreign banks of issues, Edge Law Banks and the Bank of International Settlements, and the people of Texas and the U.S. to be left without gold value or lawful money and with no currency other that a paper currency, namely the UAB Form, irredeemable in gold by the U.S. and unregistered in the U.S. having true value only in Bermuda; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, committed these acts in violation for the benefit of private interests, foreign governments, foreign banks of issue, Edge Law banks and the Bank of International Settlements; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, of conniving with the Edge Law banks, and other Edge Law institutions, accepting banks, and discount corporations, foreign banks of issue, foreign commercial banks, foreign corporations, U.S. corporations, U.S. persons, and foreign individuals with funds unlawfully taken from the U.S. Treasury and Texas through 28 TAC 791 in violation; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, unlawfully permitted and made possible "new financing" for foreigners at the expense of the U.S. Treasury, Texas, the people of Texas, the U.S. and the people of the U.S. under the government social welfare plans to the extent of billions of dollars and with having unlawfully permitted and made possible the bringing into the United States of immense quantities of foreign securities, namely the UAB Form, created in foreign countries for export to the U.S. and with having unlawfully permitted the said foreign securities to be imported into the U.S. instead of gold, which was lawfully due to the U.S. on trade balances and otherwise, and with having unlawfully permitted and facilitated the transfers of the said foreign securities in the U.S.; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, unlawfully exported U.S. coins and currency in the form of good faith and credit of the U.S. in the U.S. persons' name for a sinister purpose, and with having deprived the people of Texas and the U.S. people of their lawful medium of exchange; and

10

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, arbitrarily and unlawfully reduced the amount of money and currency in circulation in the U.S. to the lowest rate per capita in the history of the U.S. Government under Medicare and Social Security, so that the great mass of the people have been left without a sufficient credit to off-set the public debt, and I charge them with concealment and evasion in refusing to make known to Texas at 28 TAC 791 and the U.S. at 26 CFR 7011 et seq. the amount of U.S. money in coins and paper currency exported via the UAB Form and the amount remaining in the U.S. as pay, medical treatment cost, and compensation for the injured/exposed employees as a result of which refusal the Congress of Texas and the Congress of the U.S. are unable to ascertain where the U.S. coins and issues of currency are lawfully located at the present time, and what amount of U.S. currency is now lawfully held abroad; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, arbitrarily and unlawfully raised and lowered the U.S. debt under Medicare and Social Security and with having arbitrarily increased and diminished the volume of currency as assigned the people of Texas and the people of the U.S. under the Social Security Act of 1935 and secured under the Alien Registration Act of 1940 in circulation for the benefit of private interests at the expense of the Governments and the people of the U.S. and Texas also with having unlawfully manipulated money rates, wages, salaries and property values both real and personal, in the U.S. and Texas by unlawful operations in the open global money markets and by resale and repurchase agreements unsanctioned by Texas or U.S. laws, and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, brought about the decline in prices on the New York Stock Exchange and other exchanges of U.S. corporations related to the claims of the injured/exposed employees, by unlawful manipulation of money through foreign banks and Edge law banks in the U.S. and the volume of U.S. money and currency in circulation; by theft of funds from the U.S. Treasury by use of unregistered securities, namely the UAB Form, in acceptances and U.S. Government securities for exchange of the unregistered UAB Form; by service rendered to foreign and domestic speculators and politicians, and by unlawful sale, transfers, and dealing in the good faith and credit of the U.S. as unpaid claims against the foreign trust held and operated from Bermuda outside U.S. jurisdiction; and

"Whereas the unconstitutional shareholder insurance operated in Texas by the employer and insurer entities under 28 TAC 791 without a lawful contract by which the Edge Law Banks would have been given permission to operate in Texas and the U.S. the securities held in Bermuda accumulated to the extent of trillions of dollars would have gone to bolster the U.S. currency value to the U.S. people's credit in the Treasury to the extent of trillions of dollars, said amount having being publicly stated and not denied, is likely to result in connivance on the part of said defendants with others in absence of the intervention by the Office of the Texas Attorney General at Texas Business and Commerce Code section 15.21(a)(1) and by the U.S. Government at 18 USC 666 and under the U.S. Social Security Act and the Medicare Secondary Payer Act to reclaim monies and credit unlawfully taken, it being obvious that the employers, the EXEMPT employees, and insurers collectively did not nor do not intend to pay anything of value to Texas, the U.S. Government, or its' people for the said U.S. Government securities backing the political subdivision at 28 TAC 791 with no provisions for payment in gold or lawful money appearing on any of the documents filed at Texas Department of Insurance at the Division of Workers'

11

Compensation nor on the documents filed at U.S. Social Security and Medicare Agencies and Texas and the U.S. Government will thus be placed in a position of conferring a gift of trillions of dollars in the U.S. Government assets as good faith and credit onto the foreign banks and their agents, foreign persons, and foreign countries to enable them to pay more on their own bad debts to foreign governments, foreign central banks of issue, private interests, and private and commercial banks, both foreign and domestic, and the Bank of International Settlements to the detriment of the people of Texas and U.S.; and

"Whereas upon information and belief the plaintiff alleges that due to the collective defendants, joint and several, actions the U.S. Government will thus go into debt to the extent of trillions of dollars and will then have an additional claim of trillions in currency unlawfully created against it and whereas no private interest should be permitted to buy U.S. Government credit through its' people with the Government's own credit unlawfully taken and whereas currency should not be issued in U.S. persons' name for the benefit of said private interest or any interests on U.S. Government security so acquired, and whereas it has been publicly stated and not denied that the injured/exposed employees are entitled to pay, medical treatment cost, and compensation under the employment foreign trust arrangement operated from Bermuda known as the Unavoidable Absence Benefit Plan operated here in the U.S. and benefits obtained by process of the claims submitted on the UAB Form secured by U.S. persons' signatures which was secured by the employer entities, the EXEMPT employees, insurers, and their agents and then transferring the securities to Bermuda for processing then co-mingling the benefit claims with the accounts held in Bermuda banks with no financial treaty, or otherwise, under an asserted but not filed fiduciary duty under 28 TAC 791 and failed to make known to Texas or the U.S. thereupon that these deposits made under the claims secured by the signatures of the injured/exposed employees, the employees doctors, and the EXEMPT employees on the UAB Forms for the benefit of themselves and their foreign principals, and that they will convert the Bermuda currency so obtained to the use of U.S. currency by secret arrangements with the banks of Bermuda of which they are the agents, and for which they maintain an account and perform services at the expense of the U.S. Treasury and the people of Texas and the U.S. and that they will likewise confer and convey benefits upon the bank of Bermuda for which they maintain an account and perform services at the expense of the U.S. Treasury and the people of Texas and the U.S.; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, concealed the fact that the insurance policies and contracts were never filed in Texas thus nor the U.S., and with having failed to report the lack of the required filings to Texas and the U.S., the State and U.S. Congresses and with having conspired to continue in operation and with having permitted the said conspiring institutions and persons, U.S. and foreign, to receive U.S. Government funds and other deposits in exchange for unregistered securities, namely the UAB Form, and with having permitted them to exercise control over the deposits and accounts, foreign and domestic, of the U.S. and with having permitted them to transfer upward of trillions of dollars of their debts and losses to the Texas and U.S. general public and the Government of the U.S. under its' social welfare programs, and with having permitted foreign debts of the foreign trust and foreign persons to be paid with the property, the savings, the wages, benefits, compensation, and the salaries of the people of Texas and the U.S. and with the real value of the farms and the homes of the American people; and

12

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, forced by unlawful conveyance the bad debts of the foreign trust, foreign banks, and foreign persons upon the general public covertly and dishonestly and with taking the general wealth and savings of the people of Texas and  the U.S. under false pretenses  to pay the debts of the employers and insurers to foreigners with the assets of Texas and the U.S., namely the peoples' signatures guaranteeing the good faith and credit of the U.S., caused harm to Texas and the U.S. and its people and can then only be lawfully resolved by surrendering the lawfully owed  monies and monies held in account in foreign banks and held in and paid from foreign jurisdictions as insurance dividend reimbursement, salaries and paid in bonuses, as uncollected eligible benefits held in the foreign trust as a health plan, back to Texas and the U.S. for compensation payments to injured/exposed employees and reimbursement to the peoples' state and federal social welfare programs under 28 TAC 791; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, violated provisions of the Treasury Act and other laws; with maladministration of the provisions of the Treasury Act and other laws; and with having unlawfully failed to report violations of law on the part of the EXEMPT employees, associated employee representatives, employers, insurers, foreign persons, agents of foreign entities, Edge Law banks, and banks of transfer which, if known, would have caused the Edge Law banks and banks of transfer to lose their charters; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, failed to protect and maintain the good faith and credit of the U.S. and with having transferred the credit of the U.S., and good faith and credit of the U.S to foreign Governments, foreign banks of issue, foreign commercial and private banks, and other foreign institutions and individuals at a profit to themselves; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, transferred the unlawfully obtained assets from the people of Texas and the U.S. to foreign interest  so that between 1975 and the present date  the U.S. gained no asset value on net account of the injured/exposed employees but suffered a decline in its percentage of accredited value on said  reserves to the extent that U.S. social welfare programs are in danger of default notwithstanding the fact that the U.S. had a favorable balance in its social welfare programs accounts throughout that period expected to last 30 years; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, conspired to concentrate Texas and U.S. Governments assets into foreign accounts so that the accounts were controlled by foreign entities and thus the national debt and credit of the U.S. would be in the hands of foreigners and international money lenders and with having conspired to transfer to foreigners and international money lenders title to and control of the financial resources of Texas and of the U.S.; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, fictitiously paid installments on the injury/exposure claims of the employees with Government credit unlawfully taken from U.S. social welfare programs by changing injury/exposure and employment records in violation of 31 USC 5324 and operated in violation of 31 USC 5313(a) and by misrepresentation caused the plaintiff to lose rights of Texas Citizens and U.S. Citizens by deception and caused plaintiff to be placed under state and federal social welfare programs as

13

a citizen with no unalienable rights having being deceived in violation of state and federal civil right of choice by signature under Texas and U.S. Constitutions ; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, caused the loss of the U.S. Government funds entrusted to their care, though unlawfully gained; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, destroyed injured/exposed employees good faith and credit in the U.S. by manipulation of records and business practices and keeping and using false books of account to unlawfully hide and convey their illegal acts onto the injured/exposed employees by collecting all medical records in foreign jurisdictions and failing to notify Texas or the U.S. of rights and benefits hidden by their actions and with having thereby caused losses amounting to billions of dollars to Texas, U.S., and the people by denying their illegal actions in Texas and U.S. agencies, causing harm to the general public of the U.S. and Texas; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, failed to furnish true reports of the business operations and the true business conditions to Texas and the U.S. Congresses and the people, and having furnished false and misleading reports to the congresses of the U.S. and Texas; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, published false and misleading propaganda, related to the explosions, fires, chemical releases, and the claims of the injured/exposed employees, intended to deceive the American people and to cause Texas and the U.S. to lose its rights to the accumulated assets in Bermuda accounts; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, unlawfully allowing Bermuda to share in the profits due Texas and the U.S. at the expense of the Governments and the people of the U.S. and Texas; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, entered into secret agreements and illegal transactions with the bank of Bermuda and its' principles; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, swindled the U.S. Treasury and the people of the U.S. and Texas in pretending to have received payment from lawful accounts as bonuses and pay from Bermuda for all EXEMPT employees of the amounts due on the Bermuda accounts related to the U.S. and Texas claims for the injured/exposed employees under 28 TAC 791, using these amounts from accounts held in Bermuda to compensate the EXEMPT employees for administrating the injured/exposed employees claims under their asserted fiduciary duties unlawfully at 26 CFR 7701 et seq.; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, conspired with their foreign principals, agents, and others to defraud the U.S. Government and Texas thus preventing the people of the U.S. and Texas from receiving payments for the injured/exposed employees due to the U.S. from foreign corporations, foreign trusts, and foreign and domestic accounts to retire the public debt; and

14

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, robbed the U.S Government and Texas as well as the people of the U.S. and Texas by their theft and transfer of assets by use of U.S. persons' signatures guaranteeing the good faith and credit of the U.S. and other unlawful transactions created in the Bermuda accounts causing a deficit in the U.S. Treasury by transferring the claim liabilities to Texas and the U.S. Governments, which has necessitated to a large extent the borrowing of foreign monies to off-set and to avoid the destruction of our national economy and the credit of Texas and the U.S. under deficits unlawfully created through the social welfare programs; and.

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, with this process, of having schemed to reduce the U.S. from a first class power to one that is dependent by unlawfully transferring U.S. wealth and credit to foreign interest, and with scheming to reduce the U.S. from a rich and powerful nation to one that is internationally poor; and

"Whereas upon information and belief plaintiff alleges that the defendants, jointly and severally, committed the crime of having treasonable conspired and acted in insurgency against the peace and security of the U.S. and with having treasonable conspired to destroy constitutional Governments in Texas and the U.S. by transacting business without lawful registered contracts and with foreign government agents, namely the defendants by their actions, without treaty at times of proclaimed "state of emergency" and "state of war" by the U.S. Presidents under the Trading with the Enemy Act in caused the plaintiff and others to lose and have withheld all the civil rights afforded under Texas and U.S. Constitutions and laws including but not limited to the Texas Workers' Compensation Act, Texas Government Code, Texas Labor Code Texas Workforce Commission, and American With Disabilities Act under the civil right to contract by conscience choice denied to the plaintiff and others.

In the Conclusion state that recognizing many federal issues are cite this court is asked to consider only jurisdictional issues and then only any issues as they relate to the Texas Courts' authority to judge the rights and duties of Texas to police Texas agencies and Texas regulations, rules, codes, acts, statutes, and laws related to a complaint to its jurisdictional limit.

## VI.   COMPENSATORY DAMAGES

Prior to this occurrence, Plaintiff was a healthy individual who, in addition to being a hardworking, industrious and skilled worker, was and continues to be devoted to her family and friends.  As a direct and proximate result of the negligence of Phillips, Plaintiff suffered excruciating physical pain, mental anguish, and trauma for which they still suffer.  Due to the injuries suffered by Plaintiff as a result of the aforementioned negligence, Plaintiff has suffered and will continue to suffer, lost wages and medical expenses.

Plaintiff respectfully requests the Court to determine the amount of loss incurred, not only from a financial standpoint, but also in terms of good health and freedom from pain, worry, anxiety and depression.  Plaintiff asks the Court to consider separately and individually for the purpose of

determining the sum of money that will fairly and reasonably compensate Plaintiff are as follows:

(1) The physical pain and mental anguish Plaintiff has suffered in the past and in the future;

(2) The amount of reasonable medical expenses necessarily incurred in the past and in the future for the treatment of Plaintiff's injuries;

(3) The damages resulting from physical impairment Plaintiff suffered in the past and will continue to suffer and the resulting inability to perform those tasks and services the ordinarily would have been able to perform in the future;

(4) The loss of enjoyment of life Plaintiff has suffered in the past and in the future; and

(5) The amount of damages resulting from Plaintiff's loss of earning capacity.

## VII.   CONCLUSION

Plaintiff requests that the Court cite the Defendants to appear in and answer this suit and on final trial of this cause, award to the Plaintiff the relief to the jurisdiction limiter of the Court.

## VIII.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, DORA ANN BURNETT, respectfully prays and requests that Plaintiff have judgment against Defendants for actual damages in excess of the minimum jurisdictional limits of this Court, pre-judgment and post judgment interest as allowed by law, costs of suit and all other relief, at law or in equity, to which DORA ANN BURNETT may be entitled.

## IX   JURY DEMAND

**Plaintiff DORA ANN BURNETT hereby demand a trial by jury and tenders the necessary fee, a right enshrines in the Constitution of the United States of America and the State of Texas, and preserved by the sacrifices of many.**

BY: _Dora Ann Burnett_ a natural person in Proper

Person sui juris; for DORA ANN BURNETT

> 3607 Lauren Trail
> Pearland, TX 77581
> (832) 746-4529  E-Mail: doraannswan@att.net

16

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing pleading has been served on the below listed parties on the _24_ day of _February_ 2014, via facsimile, hand delivery, and/or certified mail, return receipt requested.

ConocoPhillips 600 Dairy Ashford, Houston TX 77079;

Chevron Phillips Chemical Company LP, 10001 Six Pines, Woodlands, TX 77380;

Chevron Phillips Chemical Company LLC, 10001 Six Pines, Woodlands, TX 77380;

Chevron Phillips Chemical Company, 10001 Six Pines, Woodlands, TX 77380;

Phillips Petroleum Co Phillips Building, Bartlesville, OK 74004;

Phillips Chemical Company 10001 Six Pines, Woodlands, TX 77380;

Phillips 66 Company PO BOX 4428, Houston TX 77210;

Pacific Employers Insurance Company PO Box 65693, Scranton PA 18505-65693;

ACE U.S.A. PO Box 6569, Scranton PA 18505-6569;

ACE American Insurance Company PO Box 6569, Scranton PA 18505-6569;

ESIS U.S.A. PO Box 6569, Scranton PA 18505-6569,

ESIS PO Box 6569, Scranton PA 18505-6569

AETNA U.S. Health Care PO Box 98106 El Paso, TX 79998-1106;

Aetna Life Insurance Company PO Box 14094, Lexington KY 40512-4094;

MetLife Metropolitan Life Insurance PO Box 14590 Lexington KY 40511-4590;

ACE Property Casualty Insurance Company and affiliated insurers 436 Walnut Street, Philadelphia, PA 19106;

Oil Company Insurance Limited (OCIL) of Bermuda;

DEARBORN NATIONAL PO Box 9738, Portland Maine 04104-5056;

CRAWFORD & COMPANY 2450 Severn Avenue, Suite 500, Metairie, LA 70001;
SONIA GODINEZ aka SONIA RUIZ Adjuster for ESIS, Pacific Employers Insurance Company, and ESIS USA PO BOX 6569, Scranton PA 18505-6569;

DAVID HEINSOHN, Benefit Plan Administrator of Chevron Phillips Chemical Company LP, 10001 Six Pines Drive, Suite 7062A Woodlands, TX 77380;

VIRGINIA HUBBARD, Human Resource for Chevron Phillips Chemical Company LP, 1400 Jefferson Road, Pasadena, TX 77506;

MYKE CAPPS, Human Resources for Chevron Phillips Chemical Company LP, 10001 Six Pines Drive, Suite 7062A, Woodlands, TX 77380;

LISA LAURIN HR Manager for Chevron Phillips Chemical Company LP, 1400 Jefferson Road, Pasadena, TX 77506;

TIM KIEHI, Plan Administrator Conoco Phillips Company 149M Plaza Office Building, Bartlesville OK 74004;

JAMES MULVA 600 Dairy Ashford, Houston, TX 77079;

PETER CELLA, 10001 Six Pines Drive, Woodlands, TX 77380;

SHEILA FELDMAN, HR Director 149 M Plaza Office Building, Bartlesville, OK 74004;

BOARD OF DIRECTORS ConocoPhillips, et al. 600 Dairy Ashford, Houston, TX 77079;

CHARLES COVERT, MD 800 Bering Drive, Suite 305, Houston TX 77057;

CHERYL HARTMAN USW Local 13-227 704 East Pasadena Freeway, Pasadena TX 77506;

JIMMY EASTON USW Local 13-227 704 East Pasadena Freeway, Pasadena TX 77506;

SAVANNA SIM, Employee Relations Conoco Inc., 600 Dairy Ashford, Suite MC3090, Houston TX 77079;

JOHN MICKEY BREAUX, Director, USW District 13-227, 1300 Rollingbrook Drive, St 504, Baytown, TX 77521;

JIMMY LEFON, International Representative USW District 13-227 1300 Rollingbrook Drive, St 504, Baytown TX 77521

DANIELLE SANTORI Corporate Compliance Chevron Phillips 10001 Six Pines Drive, Woodlands TX 77380;

**AFFIDAVIT of DORA ANN BURNETT,   a natural person, in Proper Person Sui Juris**

This being the statement of DORA ANN BURNETT, a natural person signified by and at the wet signature being born on February 14, 1960 of the same for DORA ANN BURNETT, the person named in the field complaint, in averment that all things asserted in the Petition of complaint, of which all things in the complaint included in entirety herein by reference, and are the same as truth and factual for both.

DORA ANN BURNETT a natural person is over twenty-one (21) years of age, having resided in Texas for 54 year and at the registered address of 3706 Lauren Trail, Pearland, TX 77584, Brazoria County, Texas, USA for nine (9) years and are not contrary to or conflicted by any laws of Texas or the USA.

DORA ANN BURNETT, a natural person, is recognized by Texas and the USA as the authorized signatory for DORA ANN BURNETT for related matters in contract, law, and equity not withstanding benefits and privileges reserved to Texas under the law.

DORA ANN BURNETT, a natural person, aver in clear mind that all statements, assertions in records, and documents provided in support of the filed complaint, though copied are true and factual reproductions of records held by Texas and/or the USA and can or will be produced as certified to any degree upon order or request sufficient to sustain the field complaint. The statements, assertions in records, and documents being in the following:

EXHIBIT 1– RE: OCIL, Affidavit, Memorandum of law
EXHIBIT 2 – Pacific Employers Insurance Company vs. Edward O'Brien
EXHIBIT 3 – Report of Absence Form, UAB
EXHIBIT 4 – Texas Attorney General Opinion DM-326, 199
EXHIBIT 5 – Medicare Secondary Payer ACT of Notice

Further, DORA ANN BURNETT, a natural person, aver that LACRISHA SMITH, a natural person, verified by wet signature on this document, is of the same mind that in witness to and support of this affidavit and all included and attached herein are true and factual to all extent allowed in law and testimony by signature.

_DORA ANN BURNETT_
DORA ANN BURNETT

_LACRISHA SMITH_
LACRISHA SMITH

1

SWORN to and subscribed before me, this 24th day of February 2014 by DORA ANN BURNETT

Personally known ___N/A___
Produced Identification ___D.L.___
Type of Identification Produced ___TX. D.L.___

NOTARY PUBLIC
STATE OF TEXAS

ASHLEY ELAINE LARA
My Commission Expires
April 25, 2017

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SCOTTIE JONES | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:13-CV-00554 |
| | § | |
| ACE TEMPEST RE USA LLC, ACE | § | JURY TRIAL DEMANDED |
| AMERICAN COMPANY, ACE TEMPEST | § | |
| RE USA LLC (AKA) ATR USA LLC; | § | |
| ACE LIMITED; OIL | § | |
| CASUALTY INSURANCE LIMITED; | § | |
| CHEVRONTEXACO | | |

## AFFIDAVIT OF THEODORE R. HENKE IN SUPPORT OF OIL CASUALTY INSURANCE LIMITED'S MOTION TO DISMISS FOR WANT OF JURISDICTION

Province of Hamilton

Bermuda

BEFORE ME, the undersigned authority, on this 22nd day of March, 2013 personally appeared Theodore R. Henke, who, being by me first duly sworn under oath did state as follows:

1.    My name is Theodore R. Henke.  I am the Senior Vice President and General Counsel for OIL Casualty Insurance Limited ("OCIL"), a Defendant in this lawsuit.  I am over the age of (18) years, of sound mind and I have never been convicted of a felony.  I am capable of making this Affidavit and I am fully competent to testify unto the matters stated herein.  I have personal knowledge of each of the facts stated herein and they are true and correct.

2.    OCIL is an insurance company incorporated in the country of Bermuda.

3.    At all relevant times, a company that sought to purchase high level excess insurance policies issued by OCIL must have become a shareholder in OCIL and signed a Shareholders' Agreement in Bermuda.

HOUSTON\5998820\1



EXHIBIT
1

4. At all relevant times, the Shareholders' Agreement provided that any dispute between OCIL and an insured shall be resolved in arbitration in London.

5. OCIL issued a high level excess insurance policy to Conoco Phillips Petroleum ("Conoco Phillips") for the policy periods at issue. In order to access coverage under the OCIL policy, Conoco Phillips became a shareholder of OCIL and signed the Shareholders' Agreement which obligated it to resolve any disputes in arbitration in London.

6. At all relevant times, OCIL did not insure ChevronTexaco for the explosion in question.

7. The OCIL records reflect that the company made a decision to reimburse Conoco Phillips the sum of $50,000,000 pursuant to the terms of the excess policy of insurance issued by OCIL to Conoco Phillips. This decision was based on documents provided to OCIL in Bermuda.

8. OCIL issued payment to Conoco Phillips by wiring the funds from OCIL's bank account in Bermuda to Conoco Phillips' bank account in New York, New York.

9. OCIL is not licensed to do business, nor has it ever sought a license to do business, in the State of Texas.

10. OCIL does not engage in the business of insurance in the State of Texas.

11. OCIL has not and is not required by statute to designation or maintain a resident agent for service of process in the State of Texas.

12. OCIL does not maintain a place of business in the State of Texas.

13. OCIL does not have agents, servants, or employees in the State of Texas.

14. OCIL has not committed any tort in the State of Texas.

15. OCIL does not own any real or personal property in the State of Texas.

16. OCIL does not pay taxes in the State of Texas.

Case 4:13-cv-00554   Document 12-1   Filed in TXSD on 03/22/13   Page 3 of 3

17.   OCIL does not maintain a bank account in the State of Texas.

18.   OCIL does not maintain a telephone listing in the State of Texas.

19.   OCIL does not advertise in the State of Texas.

20.   OCIL is not authorized to issue insurance policies in the State of Texas.

21.   OCIL has not entered into a contract with Scottie Jones or any other Texas resident by mail or otherwise to be performed in whole or in part in the State of Texas.

22.   OCIL has not entered into any contract or settlement agreement between itself and any of the other defendants in this case that would require OCIL to pay any sum of money directly to Scottie Jones.

23.   Neither OCIL nor anyone employed by or acting on behalf of OCIL had any communications directly or indirectly with Plaintiff Scottie Jones regarding bodily injury or workers compensation claim, nor any other claim arising out of the March 2000 fire and explosion occurring at the K-Resin in Texas.

24.   OCIL has not entered into any agreement, nor conducted any activity, to avail itself of the privileges or protection of Texas law.

Further Affiant sayeth not.

_____
Theodore R. Henke

Sworn to and subscribed
before me this _22nd_ day
of March, 2013.

NOTARY PUBLIC

Graham B.R. Collis
Notary Public
Bermuda

HOUSTON\5998821

3




Case 4:13-cv-00554 Document 14 Filed in TXSD on 03/25/13 Page 1 of 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SCOTTIE JONES | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:13-CV-00554 |
| | § | |
| ACE TEMPEST RE USA LLC, ACE | § | JURY TRIAL DEMANDED |
| AMERICAN COMPANY, ACE TEMPEST | § | |
| RE USA LLC (AKA) ATR USA LLC; | § | |
| ACE LIMITED; OIL | § | |
| CASUALTY INSURANCE LIMITED; | § | |
| CHEVRONTEXACO | | |

## OIL CASUALTY INSURANCE LIMITED'S INITIAL DISCLOSURES

Defendant, OIL Casualty Insurance Limited ("OCIL") makes these disclosures as required by Federal Rule of Civil Procedure 26(a). OCIL has not completed its investigation of the facts relating to this case, and has not completed its preparation for trial. The following disclosures are based upon information presently available to OCIL, and are made without prejudice to the right to utilize subsequently discovered facts, witnesses, documents, things or legal arguments. OCIL specifically reserves the right to supplement these disclosures, if and to the extent required or permitted under the Federal Rules of Civil Procedure.

(1)     Initial Disclosures

(A)     The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

RESPONSE:

At this point in time, OCIL has little knowledge of the underlying facts of this case. It's only involvement was as a high level access insurance company insuring Conoco Phillips. At some point in time Conoco Phillips submitted a claim to OCIL and OCIL paid approximately $50,000,000. OCIL has no knowledge of any individual claims and certainly has no individual knowledge about any claim regarding Scottie Jones. Subject to that objection and limitation,

599839-1

OCIL will say that Ted R. Hanke, Vice President of Claims, would have some knowledge about the insurance policy issued to Conoco Phillips and some limited knowledge regarding the payments made directly to Conoco Phillips.

(B)   A copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.

RESPONSE:

The only documents that OCIL would have knowledge of at this time, is the policy, the request for payment and supporting documents made by Conoco Phillips.

(C)   A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

RESPONSE:

This Defendant does not possess any documents as OCIL is not making a claim for any damages.

(D)   For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

RESPONSE:

None.

(2)   Disclosure of Expert Testimony

At this point in time, OCIL has not identified any expert witness(es) who's testimony would require disclosure, due in part to the manner in which Plaintiff has phrased his claims. Moreover, at this point in time OCIL has moved to dismiss for lack of jurisdiction and therefore OCIL does not see a need for any expert witnesses. Moreover, it is the intention of OCIL to file a 12(b)(6) Motion, a Motion for More Definite Statement of Plaintiff's Claims, some amount of written discovery and perhaps a deposition regarding the substance of Plaintiff's claims. Once that is completed, OCIL may elect to supplement this disclosure response as well as comply with any other orders of this court with respect to the designation and disclosure of expert witness opinions and testimony.

Respectfully submitted,

*/s/ Ronald E. Tigner*

Ronald E. Tigner
Attorney-In-Charge
State Bar No. 20028000
Fed. ID No. 3095
E-mail: rtigner@cozen.com

OF COUNSEL:

COZEN O'CONNOR
LyondellBasell Tower
1221 McKinney Street, Suite 2900
Houston, Texas 77010
Telephone: (832) 214-3900
Telecopier: (832) 214-3905

ATTORNEY FOR DEFENDANT,
OIL CASUALTY INSURANCE LIMITED

CERTIFICATE OF SERVICE

I hereby state that a true and correct copy of the foregoing was mailed via certified mail on this

25th day of March, 2013, to the following:

Mr. Jeffry P. O'Dea
Burt Barr & O'Dea, LLP
3900 Essex Lane, Suite 330
Houston, Texas 77027

Mr. Scottie Jones (*Pro Se*)
7816 King Street
Houston, Texas 77028

*/s/ Ronald E. Tigner*

Ronald E. Tigner

P-13

CAUSE NO. 2002-14862

| | | |
|---|---|---|
| PACIFIC EMPLOYERS<br>INSURANCE COMPANY | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| EDWARD O'BRIEN | § | 80TH JUDICIAL DISTRICT |

## TEXAS WORKERS' COMPENSATION COMMISSION'S
## RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Texas Workers' Compensation Commission ("TWCC"), Intervenor

in the above-styled case, and files this Response to Plaintiff's, Pacific Employers Insurance

Company's, Motion for Summary Judgment containing summary judgment proof which is

incorporated by reference into this Motion. In support thereof would respectfully show the

Court the following:

### I.
### SUMMARY OF ARGUMENT

In this workers' compensation case, Pacific Employers Insurance Company

("Plaintiff", "Carrier") has filed a motion for summary judgment alleging that Edward

O'Brien ("O'Brien") is not entitled to temporary income benefits (TIBs) for the period he

received payments under his employer's Unavoidable Absence/Occupational Injury and

Illness Policy ("UAB policy"). Specifically, Plaintiff asserts that the payments made by the

1

RECORDER'S MEMORANDUM
This instrument is of poor quality
and not satisfactory for photographic
recordation; and/or alterations were
present at the time of imaging


EXHIBIT

employer qualify as temporary income benefits; and thus Defendant is not entitled to temporary income benefits from both the employer and Carrier. The Plaintiff is mistaken in characterizing the employer's salary continuation as temporary income benefits.

Fact issues exist as to the exact nature of payments made by the employer under the UAB policy and how the UAB policy is applied under the Texas Workers Compensation Act. Plaintiff misconstrues the Workers' Compensation Act, alleging that payments made by the employer were an initiation of benefits or salary continuation payments not subject to post-injury earnings analysis and offset under the Act. Plaintiff also misconstrues the Appeals Panel decision, contending that directing Carrier to pay TIBs would result in double recovery by Defendant, which the Act and TWCC rules do not allow.

Finally, Plaintiff has failed to provide sufficient proof, namely the actual workers' compensation insurance policy and the actual UAB policy. The Employer likely receives a lower premium due to the employer payments made the first 26 weeks of lost time for a work-related injury to support Carrier's obligation to pay temporary income benefits under the Workers' Compensation Act.  Accordingly, without sufficient evidence and a clear conflict in the evidence, the Court should deny Plaintiff's motion for summary judgment.

## II.
## PROCEDURAL HISTORY

This case is an appeal of a Texas Workers' Compensation Commission Appeals Panel decision issued in favor of Defendant Edward O'Brien. On February 13, 2002, in TWCC Appeal No. 013125-s, the Appeals Panel reversed the decision of the hearing officer in a

2

Certified Document Number: 8351482 - Page 2 of 13

contested case hearing held on November 29, 2001 and rendered a decision in favor of

Defendant, directing Plaintiff to pay temporary income benefits calculated in accordance with

the Act and TWCC rules.   Plaintiff brought suit in this Court in order to seek judicial review

of the Appeals Panel decision.   TWCC intervened to show the Court and jury that the

decision of the Appeals Panel is correct and should be followed by this Court.

### III.
### STANDARD OF REVIEW

In a traditional summary judgment proceeding, the nonmovant is not required to

produce summary judgment evidence unless the movant can establish that it is entitled to

summary judgment as a matter of law.   *See Casso v. Brand*,   776 S.W.2d 551, 556

(Tex.1989). In deciding whether a disputed issue of material fact exists, courts take as true

all evidence favorable to the nonmovant. *See Limestone Prods. Distribution Inc. v.

McNamara*, 71 S.W.3d 308 (Tex. 2002).  Courts must view the evidence in the light most

favorable to the nonmovant and must indulge very reasonable inference and resolve all

doubts in favor of the nonmovant. *See Nixon v. Mr. Property Mgmt Co.*, 690 S.W.2d 546,

549 (Tex. 1985).

### IV.
### SUMMARY JUDGMENT EVIDENCE

In support of this Response to Plaintiff's Motion for Summary Judgment, TWCC

relies on all exhibits attached to Plaintiff's Motion for Summary Judgment.   Such are

incorporated herein by reference for all purposes.

3

Certified Document Number: 8351482 - Page 3 of 13

# V.
## ARGUMENT AND AUTHORITIES

In its Motion for Summary Judgment, Plaintiff attempts to avoid its responsibility to provide temporary income benefits to Defendant, Edward O'Brien ("O'Brien") by improperly interpreting its coverage duties under the requirements of the Act. Plaintiff opines that payments made by the employer were payments in lieu of any and all temporary income benefits Carrier would otherwise be required to pay. Plaintiff erroneously interprets the Appeals Panel decision directing Carrier to pay temporary income benefits to O'Brien, claiming it would result in double recovery. Plaintiff has failed to present sufficient proof supporting its position, specifically the actual workers' compensation insurance policy as well as the actual UAB policy.

### A.   Carrier's motion for summary judgment is based on erroneous interpretations of the Workers' Compensation Act.

The Workers' Compensation Act is voluntary in Texas, and participants (including employees, employers, and insurance carriers) cannot agree to enjoy the benefits of the Act without also following the requirements of the Act. *Paradissis v. Royal Indem. Co.*, 507 S.W.2d 526, 529 (Tex.1974). The Supreme Court made clear that participants voluntarily agree that relinquish rights and remedies otherwise existing under the common law, and that the statutory provisions of the Workers' Compensation Act control their rights and remedies. *Paradissis* at 529. The Employer and the Insurance Carrier elected to participate under the

4

Texas Workers' Compensation Act and must be bound by the requirements.

Under Texas Labor Code section 408.003, titled "Reimbursable Employer Payments; Salary Continuation; Offset Against Income Benefits; Limits," the Legislature expressly stated:

(a) After an injury, an employer may:
   (1)   initiate benefit payments, including medical benefits; or
   (2)   on the written request or agreement of the employee, supplement income benefits paid by the insurance carrier by an amount that does not exceed the amount computed by subtracting the amount of the income benefit payments from the employee's net preinjury wages.

(b) If an injury is found to be compensable and an insurance carrier initiates compensation, the insurance carrier shall reimburse the employer for the amount of benefits paid by the employer to which the employee was entitled under this subtitle. Payments that are not reimbursed or reimbursable under this section may be reimbursed under section 408.127.

(c) The employer shall notify the commission and the insurance carrier on forms prescribed by the commission of the initiation of and amount of payments made under this section.

(d) Employer payments made under this section:
   (1)   may not be construed as an admission of compensability; and
   (2)   do not affect the payment of benefits from another source.

(e) If an employer does not notify the insurance carrier of the injury in compliance with section 409.005, the employer waives the right to reimbursement under this section.

(f) Salary continuation payments made by an employer for an employee's disability resulting from a compensable injury shall be considered payment of income benefits for the purpose of determining the accrual date of any subsequent income benefits under this subtitle.

(g) If an employer is subject to a contractual obligation with an employee or group of employees, such as a collective bargaining agreement or a written agreement or policy, under which the employer is required to make salary continuation payments, the employer is not eligible for reimbursement under this section for those payments.

(h) Payments made as salary continuation or salary supplementation do not affect

5

Certified Document Number: 8351482 - Page 5 of 13

the exclusive remedy provisions of section 408.001.

(Emphasis Added.)  Section 408.103(g) prohibits reimbursement from the carrier to the employer under the UAB policy.

Under Section 408.103, an employee is only entitled to temporary income benefits based on a percentage of the employee's average weekly wage minus any "weekly earnings" after the injury. TEX. LAB. CODE 408.103.  Section 408.105 expressly allows an employer to pay the salary of an employee "in lieu of temporary income benefits."  This does not, however, allow an employer to pay temporary income benefits.  Section 408.105 expressly allows an employer to also pay "wage supplementation" along with salary continuation.  However, an employer is not entitled to reimbursement of this "wage supplementation." TEX. LAB. CODE 408.105.

Under the facts of this case the Employer, under Section 408.003, was required to make salary continuation payments pursuant to the UAB policy. These payments are considered payment of income benefits only for the purpose of determining the accrual date for payment of any subsequent income benefits.  See TEX. LAB CODE 408.003(f).  The TWCC adopted rules consistent with Section 408.003 and 408.105.  TWCC Rule 129.2 specifically includes in post-injury earnings any salary continuation paid by the employer to the employee pursuant to a contractual obligation between the employer and the employee. 28 TEX. ADMIN. CODE §129.2(c)(6). Although not considered temporary income benefits, such post-injury earnings reduce the amount of temporary income benefits payable to the

6

Certified Document Number: 8331482 - Page 6 of 13

employee. In this case because of the salary continuation, the employee had disability and is entitled to any temporary income benefits minus the post-injury earnings for the period that the employer continued to provide incomplete salary payments after the employee began losing time from work.

Carrier contends that the incomplete salary continuation by the employer negates Carrier's responsibility to pay temporary income benefits. In the event that the salary continuation equals or exceeds the Average Weekly Wage, Carrier would be correct, and O'Brien would not be entitled to additional TIBs payments. In this case, however, the employer paid incomplete salary continuation in an amount less than the stipulated Average Weekly Wage. As such, the incomplete salary continuation is designated post-injury earnings and is subtracted from the Average Weekly Wage for the purpose of calculating TIBs.

Texas Labor Code Section 408.103(a)(1) provides that the amount of temporary income benefits equals "70 percent of the amount computed by subtracting the employee's weekly earnings after the injury from the employee's average weekly wage." In the contested case hearing, the parties stipulated that O'Brien's Average Weekly Wage equaled $1,054.41. *See* Exhibit D attached to Plaintiff's Motion for Summary Judgment . Under the UAB policy, Employer made payments to O'Brien based on what it determined was "regular weekly pay" in the amount of $938.80 for the first twenty-six (26) week period and $469.40 for the second twenty-six (26) week period. Consequently, these payments constituted

7

weekly earnings or post-injury earnings as defined by TWCC Rule 129.2. 28 Tex. Admin. Code §129.2(c)(6). As Plaintiff explains in its Motion for Summary Judgment, an injured employee is entitled to his pre-injury average weekly wage minus any post-injury weekly earnings multiplied by seventy percent (70%). Accordingly, O'Brien is entitled to TIBs in the amount of $1,054.41 (his stipulated average weekly wage) minus $938.80 (payments made by Employer) multiplied by seventy percent (70%) for the first twenty-six (26) week period. Similarly, O'Brien is entitled to $1,054.41 (average weekly wage) minus $469.49 (payments by Employer) for the second twenty-six (26) week period. The amount of TIBs due amounts to $80.93 for the first period and $409.51 minus the $61.60 already paid by Carrier, or $347.91, for the second period.

Contrary to Plaintiff's allegations, the Appeals Panel decision does not award O'Brien temporary income benefits from both Employer and Carrier, nor does the decision provide a double recovery.   Plaintiff contends that under the Appeals Panel decision, Carrier is obligated to pay the full maximum temporary income benefits rate of $531.00 per week for the first twenty-six (26) week period and $469.40 for the second twenty-six (26) week period on top of the payments by Employer. This is simply not the case.   By subtracting the Employer payments from the Average Weekly Wage, the amount of TIBs is reduced and double recovery is avoided. O'Brien receives neither more nor less TIBs as a result of the payments made by Employer.

8

B.   Plaintiff has failed to provided sufficient evidence to support judgment as a matter of law.

An insurance carrier cannot complain about what the requirements of the employer and the insurance carrier are under a workers' compensation insurance policy without producing the policy. *See Cigna Ins. Co. of Texas v. Evans*, 847 S.W.2d 417, 420 (Tex. App.--Texarkana 1993, writ denied). In *Evans*, the insurance carrier did not offer evidence concerning the terms of the claimant's group health policy, and the court refused to speculate whether the medical policy covered all injuries or if it excluded on-the-job injuries. *Id.* at 423.

In order for Plaintiff to entertain their position that payments made by Employer were intended to replace temporary income benefits, and that the parties agreed to such, Plaintiff must provide the relevant policies, namely the actual workers' compensation insurance policy and the actual UAB policy. Without the language of the actual agreements, it is not evident that Employer or Carrier intended for the payments made by the Employer, in relation to the workers' compensation policy or pursuant to the UAB policy, to attempt to replace TIBs under the Workers' Compensation Act. By failing to provide the policies at issue, Plaintiff has failed to provide sufficient evidence to support judgment as a matter of law.

## VI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Texas Workers' Compensation Commission, Intervenor, prays that the Court do the following:

9

1.  deny the Plaintiff's Motion for Summary Judgment as a matter of law;

2.  enter an order denying the Plaintiff's Motion for Summary Judgment
    because fact issues exist; and

3.  grant Intervenor such other relief, legal and equitable, to which it is entitled.

Respectfully submitted,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

JEFFREY S. BOYD
Deputy Attorney General for Litigation

NELLY R. HERRERA, Chief
Tort Litigation Division

ASHLEY D. RUSSELL
Assistant Attorney General
State Bar No. 24033145
Tort Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2197, Ext.
FAX: (512) 463-2224

10

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded by facsimile and/or by certified mail, return receipt requested, by depositing it enclosed in a postpaid, properly addressed wrapper in a post office or official depository under the care and custody of the United States Postal Service on this, the __18th__ day of September, 2002, to the following:

Steven T. Smith
Smith & Carr, P.C.
4900 Woodway, Suite 1111
Houston, TX 77056
facsimile 713-627-2168
ATTORNEY FOR PLAINTIFF,
PACIFIC EMPLOYERS INSURANCE COMPANY

Caldwell Fletcher
3200 Travis, 3rd Floor
Houston, TX 77006
facsimile 713-751-0412
ATTORNEY FOR DEFENDANT,
EDWARD O'BRIEN

_Sheridan L Gilkerson for_
ASHLEY D. RUSSELL
Assistant Attorney General

11

CAUSE NO. 2002-14862

| | | |
|---|---|---|
| PACIFIC EMPLOYERS | § | IN THE DISTRICT COURT |
| INSURANCE COMPANY | § | |
| | § | |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| EDWARD O'BRIEN | § | 80TH JUDICIAL DISTRICT |

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

On this the _____ day of _____, 2002, came on to be considered Plaintiff,

Continental Casualty Company's Motion for Summary Judgment. All parties appeared and

announced ready. The Court, after hearing argument from the parties and reviewing the pleadings

on files is of the opinion that the motion should be DENIED.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion for

Summary Judgment is DENIED, and that all costs be taxed against Plaintiff. All relief not expressly

stated herein is denied.

SIGNED this _____ day of _____, 2002.

_____
JUDGE PRESIDING

Void

12



OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

RECORDER'S MEMORANDUM
This instrument is of poor quality
and not satisfactory for photographic
recordation; and/or alterations were
present at the time of imaging

September 18, 2002



Mr. Charles Bacarisse            *VIA OVERNIGHT DELIVERY*
Harris County District Clerk
301 Fannin, 1st Floor
Houston, Texas 77002

RE:   Cause No. 2002-14862; *Pacific Employers Insurance Company vs. Edward O'Brien;* In the 80th Judicial District Court of Harris County, Texas.

Dear Mr. Bacarisse:

Enclosed for filing, please find an original and one (1) copy of **Texas Workers Compensation Commission's Response to Plaintiff's Motion for Summary Judgment** regarding the above referenced matter.

Please file the original and return the file-stamped copy to my office via the self-addressed, postage-paid envelope provided for your convenience.

By copy of this correspondence, all interested parties are being notified of this filing as indicated below.

/dr
encl.

Sincerely,

Diana Reed Legal Secretary for
ASHLEY D. RUSSELL

cc:   *Steven T. Smith - CMRRR 7001 0360 0001 0858 0296 & Facsimile*
*Caldwell Fletcher - CMRRR 7091 0360 0001 0858 0302 Facsimile*

Post Office Box 12548, Austin, Texas 78711-2548 · (512) 463-2100 · www.oag.state.tx.us
*An Equal Employment Opportunity Employer · Printed on Recycled Paper*



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this    April 23, 2012

Certified Document Number:        8351482

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com

## PHILLIPS CHEMICAL COMPANY - HOUSTON CHEMICAL COMPLEX

## REPORT OF ABSENCE FORM

☐ Non-Occupational Injury/Sickness
☐ Serious ( of a member
   Illness ( of immediate family )
☐ Personal Business

☐ Jury Duty
☐ Military Leave
☐ Death in Family
☐ Other - Describe

Pay Period Ending (Sunday), _____ 19 _____

Name of Employee _____ Employee ID# _____

Date last worked _____ 19 _____

PART DAY ABSENCE: Date _____ Hours off: From _____ To _____

First full day absence began _____ 19 _____

Cause of Absence _____

Date returned to work _____

If absence due to illness of immediate family member, complete the back of this form.

**If Death In Immediate Family, Complete Following:**  (Attach documentation of newspaper clipping, funeral home slip, etc.)

Name of deceased: _____ Relationship: _____

Date of death: _____ Funeral Location/Date _____

For the pay period in which absence occurs, code prorate days and regular scheduled work days missed.

CODES:  **X** = Prorate Day     **S** = Sick     **SF** = Serious Illness in Family    **ML** = Military
        **JD** = Jury Duty    **PB** = Personal Business    **DF** = Death in Family     Leave

| 1 __ | 2 __ | 3 __ | 4 __ | 5 __ | 6 __ | 7 __ | 8 __ | 9 __ | 10 __ | 11 __ | 12 __ | 13 __ | 14 __ | 15 __ | |
| 16 __ | 17 __ | 18 __ | 19 __ | 20 __ | 21 __ | 22 __ | 23 __ | 24 __ | 25 __ | 26 __ | 27 __ | 28 __ | 29 __ | 30 __ | 31 __ |

I wish to receive benefits for absences that qualify under the company's Unavoidable Absence Plan and hereby certify that all statements made herein are a true and complete representation of the facts.

_____      _____
      Employee's Signature                        Date

Reviewed by:
Supv/Supt _____

**EXHIBIT**
**3**

**FOR ADMINISTRATIVE PURPOSES ONLY**

Approved: _____

FORM 13774-N 12-84

**Request for Unavoidable Absence Benefits for Sickness of Employee / Family Member**

## ATTENDING PHYSICIAN STATEMENT

NOTE TO ATTENDING PHYSICIAN: The following is for your help and guidance.

There are times when it may be necessary that an employee be absent from work because of family obligations or sickness that is not a "serious" nature. An example of such an absence may be that an employee has to drive an immediate member of his family because of the member's inability to drive; an employee may have to remain at home to take care of children because the spouse for some reason is unable to do so; an employee may want or feel obligated to go to the doctor with a member of his family even though not of a serious nature.

In such cases where the illness itself is not of a "serious" nature, the absence is not covered by the Unavoidable Absence Benefits policy, since the policy only covers absences because of "serious" illness. In many such instances, so that the employee will not lose pay, arrangements can be made to take a day of vacation.

Under the plan, "serious" illness means that the illness is of such a nature that the employee's presence is required, as during emergency or surgical procedure and recovery immediately following surgery and periods during which the patient's condition is grave.

Name of Employee _____

**Name of Patient** (and relationship, if other than Employee) _____

Did you treat patient?  ☐ Yes  ☐ No

If answer affirmative give dates:  First _____  Last _____

Reason for absence from work _____

Is employee now available to work  ☐ Yes ----- Date became available _____ ;  ☐ No

If employee is unable to work, estimate date employee will be able to work _____

Date _____  Signed _____

Name (printed) _____

Address _____

Phone Number _____

Morales Opinion No. DM-326

Page 1 of 8





# Office of the Attorney General
# State of Texas

March 2, 1995

| | |
|---|---|
| Honorable Kim Brimer<br>Chair<br>Committee on Business & Industry<br>Texas House of Representatives<br>P.O. Box 2910<br>Austin, Texas 78768-2910 | Opinion No. DM-326<br><br>Re: Whether the legislature constitutionally may establish a guaranty association for the workers' compensation liabilities of political subdivisions in which the membership would be mandatory and as to which the funding would come through assessments imposed on the membership (RQ-742) |

Dear Representative Brimer:

You have informed us that a subcommittee of the Committee on Business & Industry (the "committee") has proposed a recommendation for the protection of the self-insurance funds of political subdivisions and the insurance pools of political subdivisions. Specifically, the subcommittee proposes that the legislature

[c]reate a guaranty association specifically for public insurance pools and public self-insurers separate from the Texas Property and Casualty Insurance Guaranty Association. Membership in this as- sociation would be mandatory. The association will pay claims in the event that assets of an insolvent pool or self-insurer are insufficient to pay claims.

You indicate that the membership would fund the guaranty association through assessments.

You evidently are concerned about the constitutionality of legislation such as that proposed, should the legislature enact it. You therefore ask whether the Texas Constitution prohibits the legislature from establishing a guaranty

association for the workers' compensation liabilities of certain political subdivisions in which the membership would be mandatory and which would derive its funding through assessments imposed on the membership. In our opinion, if the legislature were to enact the proposal you have described, the resulting codification would violate article III, section 52(a) of the constitution.

From your description of the proposed guaranty association, we understand that it would be similar to, although separate from, the Texas Property and Casualty Insurance Guaranty Association (the "association"), created pursuant to section 6 of the Property and Casualty Insurance Guaranty Act, Ins. Code art. 21.28-C. Section 6 requires every entity that writes certain kinds of insurance, including workers' compensation insurance, see Ins. Code § 21.28-C, §§ 3, 6, to become a member of the association, see id. § 6. The association is required to pay in full all of a member insurer's covered claims that meet certain requirements if the member insurer is placed in temporary or permanent receivership under a court order or in conservatorship by the commissioner of insurance. Id. § 8(a). To pay its obligations, the association assesses its member insurers. Id. § 8(c).

You have cited article III, sections 52, 60, and 61 of the Texas Constitution. Article 52(a) provides as follows:

Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company. However, this section does not prohibit the use of public funds or credit for the payment of premiums on nonassessable life, health, or accident insurance policies and annuity contracts issued by a mutual insurance company authorized to do business in this State.

Article III, sections 60 and 61 of the constitution are substantially identical, although section 60 pertains to "counties and other political subdivisions," while section 61 pertains to "cities, towns, and villages." Essentially, sections 60 and 61 empower the legislature to enact laws enabling each county, municipality, or other political subdivision of the state to provide workers' compensation insurance for its employees. Sections 60 and 61 further authorize the legislature to "provide suitable laws for the administration of such insurance" in the political subdivisions "and for the payment of the costs, charges, and premiums on such policies of insurance and the benefits to be paid thereunder." Tex. Const. art. III, § 61; cf. id. § 60. The electorate adopted article III, section 60 in 1948 and section 61 in 1952. Prior to the adoption of these sections, counties and municipalities were precluded from purchasing workers' compensation insurance for their employees. This office concluded in Attorney General Opinion O-779 that a county had no duty to provide workers' compensation insurance for its employees. The opinion noted that a county and its political subdivision were immune from liability to employees. Attorney General Opinion O-779 (1939) at 1-2. Similarly, in Attorney General Opinion O-5315 this office concluded that a county commissioners court was not

authorized to purchase workers' compensation insurance for county employees. The opinion appears to rely on three rationales: first, a county is not liable in damages for injuries sustained as a consequence of its employees' tortious or negligent acts, Attorney General Opinion O-5315 (1943) at 2; second, no law authorizes counties to purchase workers' compensation for its employees, id. at 3; and third, article III, section 52 prohibits a county from expending public funds on donations and gratuities, id.

At the time this office issued Attorney General Opinion O-5315 and the electorate voted to add sections 60 and 61 to the constitution, courts and this office construed article III, section 52 strictly to preclude any expenditure of public funds to an individual, association, or corporation whatsoever. See, e.g., San Antonio Indep. Sch. Dist. v. Board of Trustees, 204 S.W.2d 22, 25 (Tex. Civ. App.--El Paso 1947, writ ref'd n.r.e.); Bland v. City of Taylor, 37 S.W.2d 291, 292-93 (Tex. Civ. App.--Austin 1931), aff'd sub nom. Davis v. City of Taylor, 67 S.W.2d 1033 (1934); Attorney General Opinions O-5386 (1943) at 2; O-3145 (1941) at 1-2; O-2629 (1940) at 2. In part, the legislature may have proposed to add to article III, section 60 and later section 61 to circumvent section 52's proscription of such a use of county or municipal funds. See Tex. Const. art. III, § 60 Interpretive Commentary and Comment--1962 Amendment; id. § 61 Interpretive Commentary.

In recent years, the courts and this office have taken a more liberal view of article III, section 52(a), interpreting the section to permit grants or loans to a private individual, association, or corporation so long as the grant or loan serves a public purpose. See Davis v. City of Lubbock, 326 S.W.2d 699, 709 (Tex. 1959); State v. City of Austin, 331 S.W.2d 737, 742 (Tex. 1960); Byrd v. City of Dallas, 6 S.W.2d 738, 740 (Tex. 1928); Harris County v. Dowlearn, 489 S.W.2d 140, 144 (Tex. Civ. App.--Houston [14th Dist.] 1972, writ ref'd n.r.e.); see also Attorney General Opinions JM-1229 (1990) at 3-5 (and sources cited therein); JM-1209 (1990) at 1 (and sources cited therein); JM-1199 (1990) at 1 (and sources cited therein); 1 GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 233-34 (1977). Under the more liberal interpretation, a court might conclude that article III, section 52(a) authorizes the legislature to require a county or municipality to pay assessments to a guaranty association such as that proposed if the legislature has determined such payments serve a public purpose and sufficient controls are in place to ensure the public purpose is accomplished.

In this particular case, however, we conclude your proposal contravenes article III, section 52(a) as a matter of law. We base our conclusion on judicial and attorney general decisions applying the section to mutual insurance companies. We also rely upon the history of a 1986 amendment to section 52(a).

In our opinion, the guaranty association your committee has proposed is analogous to a mutual insurance company that operates on the basis of assessments. See 2 GEORGE J. COUCH, CYCLOPEDIA OF INSURANCE LAW § 19:18, at 685 (2d ed. 1984) (stating that mutual company may operate

on basis of cash premiums, assessments, or premium notes, or any combination of these). A mutual insurance company is one "in which the members mutually contribute to the payment of losses and expenses, and in which the indemnity or benefit to accrue is conditioned upon persons holding similar contracts." Id. § 19:14, at 680. Thus, a mutual company is one in which a member is both insurer and insured. Id. Consequently, "the policyholders are, so far as rights and remedies are concerned, stockholders, the same as stockholders in a stock corporation." Id. at 681; see MICHAEL C. THOMSETT, INSURANCE DICTIONARY 134 (1989) (defining "mutual company" as "type of insurance company that is owned entirely by the policyholders, in proportionate shares").

A mutual insurance company that operates on the basis of cash premiums issues what is commonly known as "nonassessable" policies. 2 COUCH, supra, § 19:19, at 686. An owner of a nonassessable policy has no further obligation to contribute for the duration of the policy. Id. On the other hand, a mutual insurance company that operates on the basis of assessments "is dependent upon the collection of an assessment upon persons holding similar contracts." Id. § 19.42, at 704; see THOMSETT, supra, at 16 (defining "assessment company").

We turn to the judicial decisions to which we alluded earlier. In City of Tyler v. Texas Employers' Insurance Ass'n, 288 S.W. 409 (Tex. Comm'n App. 1926, judgm't adopted), the Texas Commission of Appeals considered whether an incorporated munici- pality may subscribe to the Texas Employers' Insurance Association (the "TEIA"), an association to which employers that are subject to the workers' compensation laws may subscribe. Id. at 411; see V.T.C.S. art. 8308, § 7 (authorizing any employer who may be subject to workers' compensation laws to subscribe to TEIA).

The court noted that the TEIA required its subscribers to pay a proportionate share of any assessment the TEIA levied to cover its losses and expenses. City of Tyler, 388 S.W. at 411-12; see V.T.C.S. art. 8308, § 15 (requiring TEIA to make assessment for amount necessary to pay losses in any year in which admitted assets in excess of unearned premiums are insufficient to pay incurred losses and expenses). The court cited two reasons article III, section 52 prohibited municipalities from subscribing to such an association. First, the court found that the TEIA "is a corporation engaged in the insurance business on the mutual plan, whose subscribers are stockholders in such corporation." City of Tyler, 388 S.W. at 412. Because article III, section 52 forbids the legislature from authorizing a political corporation to become a stockholder in an association or corporation, the court held that article III, section 52 precludes a municipality from becoming a member of the TEIA. Id. Second, the court determined that, because a subscriber to the TEIA was obligated to pay assessments to cover the TEIA's losses, any municipality that subscribes to the TEIA lends its credit in violation of article III, section 52. Id.

In Lewis v. Independent School District, 161 S.W.2d 450 (Tex. 1942), the Texas Supreme Court reaffirmed its conclusions in City of Tyler and other cases that the "clear and unambiguous" language of article III, section 52

"prohibits cities from becoming members of a mutual insurance association whose subscribers are stockholders in such company." Lewis, 161 S.W.2d at 452.

This office has concluded that a political subdivision's purchase of assessable insurance coverage is tantamount to a lending of credit in contravention of article III, section 52. See, e.g., Attorney General Opinions H-1300 (1978) at 1; H-755 (1975) at 2; H-365 (1974) at 1. In Attorney General Opinion H-338 this office considered whether political subdivisions might participate in the Texas Municipal League's Workmen's Compensation Joint Insurance Fund (the "fund"). The opinion determined that the fund approximated some form of mutual insurance. Attorney General Opinion H-338 (1974) at 17-18. "[The fund] calls for the payment of premiums based on predicted, not actual, experience with the investment of unused funds, with profits to be returned to members as a reduction in premiums at some future time." Id. The opinion concluded that the fund violated article III, section 52 of the constitution. Id.

Subsequently, in Attorney General Opinion H-338A this office considered whether a revamped fund contravened article III, section 52. Attorney General Opinion H-338A (1974) at 1-2. Under a supplemental agreement, members of the fund agreed annually to pay into the fund sums calculated with reference to each member's actual expense and loss experience. Supplement to Attorney General Opinion H-338A (1974) at 1-2. The opinion concluded that the fund did not contravene article III, section 52's prohibition against the lending of credit. Attorney General Opinion H-338A, at 2. Rather, the opinion stated, the amended fund had "more nearly . . . the characteristics of self-insurance." Id.

None of the judicial decisions or attorney general opinions that we have just cited have been overruled. Moreover, we believe the history of the addition of the last sentence to subsection (a) to article III, section 52 of the constitution indicates that these decisions and opinions correctly state the law. In an apparent belated response to the court's holdings in City of Tyler v. Texas Employers' Insurance Ass'n, 288 S.W. 409 (Tex. Comm'n App. 1926, judgm't adopted), and Lewis v. Independent School District, 161 S.W.2d 450 (Tex. 1942), the legislature proposed in 1985 to amend article III, section 52(a) by authorizing the use of public funds for the purchase of certain nonassessable insurance policies from mutual insurance companies. See Texas Legislative Council, Analyses of Proposed Constitutional Amendments Appearing on the November 4, 1986, Ballot 15 (Sept. 1986); see also House Comm. on Insurance, Bill Analysis, H.J.R. 73, 69th Leg. (1985). In our opinion, the legislature, by passing a resolution to amend section 52(a) in this fashion, and the electorate, by approving the amendment, intended to alter the law, as interpreted in City of Tyler and Lewis, but only to the extent the law precluded a political subdivision from purchasing certain nonassessable insurance policies from mutual insurance companies. See 12A TEX. JUR. 3D Constitutional Law § 23, at 326 (1993) (stating that constitutional provision is to be construed in light of voters' intention). We do not believe the legislature and electorate intended to authorize a political subdivision to purchase any assessable insurance policy from a mutual insurance company.

For this office now to conclude that a political subdivision may purchase an assessable insurance policy from an association similar to a mutual insurance company would be to disregard existing precedent and the 1985 amendment to article III, section 52(a) of the constitution. Relevant to the situation here, the Texas Supreme Court expressly has concluded that a political subdivision may not subscribe to a mutual insurance association that operates on the basis of assessments. Furthermore, the electorate has adopted an amendment to the constitution approving the use of public funds only for the payment of certain nonassessable insurance policies. In light of these compelling facts, we must conclude that the subcommittee's proposal to establish a guaranty association, to require public insurance pools and public self-insurers to join the association, and to fund the association through assessments on the members would, if enacted, violate article III, section 52(a) of the constitution for two reasons. First, the obligation to pay assessments to a mutual insurance company, which we contend the guaranty association is, constitutes an unconstitutional lending of credit. Second, membership in a mutual insurance company that operates on the basis of assessments is tantamount to holding stock in a corporation, association, or company.

## SUMMARY

A proposal to establish a guaranty association, to require public insurance pools and public self-insurers to join the association, and to fund the association through assessments on the members would, if enacted, violate article III, section 52(a) of the Texas Constitution for two reasons. First, the obligation to pay assessments to a mutual insurance company, such as the guaranty association, constitutes an unconstitutional lending of credit. Second, membership in a mutual insurance company that operates on the basis of assessments is tantamount to holding stock in a corporation, association, or company.

Yours very truly,

*Dan Morales*

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General

## Footnotes

1. In general, a "covered claim" is "an unpaid claim of an insured or third-party liability claimant that arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Act applies, issued or assumed (whereby an assumption certificate is issued to the insured) by an insurer licensed to do business in this state, if that insurer becomes an impaired insurer and the third-party claimant or liability claimant or insured is a resident of this state at the time of the insured event, or the property from which the claim arises is permanently located in this state." Ins. Code art. 21.28-C, § 5(8).

2. We note that, pursuant to its authority under sections 60 and 61 of the constitution, the legislature has enacted section 504.011 of the Labor Code. See Attorney General Opinion H-338 (1974) at 3 (concluding that statutory predecessor to section 504.011 was constitutional). Section 504.011 requires every political subdivision to extend workers' compensation benefits to its employees by:

(1) becoming a self-insurer;

(2) providing insurance under a workers' compensation insurance policy; or

(3) entering into an interlocal agreement with other political subdivisions providing for self-insurance.

See also Attorney General Opinion H-338A (1974) (describing interlocal agreement as providing for self- insurance and as not inconsistent with "lending of credit" provisions of Texas Constitution article III, section 52).

3. We further note that the TEIA is authorized to pay dividends to its subscribers. See V.T.C.S. art. 8308, § 16. Additionally, in any meeting of the subscribers, each subscriber is entitled to one vote, except that an employer of five hundred covered employees is entitled to two votes and an employer is entitled to one vote for every five hundred covered employees thereafter. Id. § 8.

Texas OAG home page | Opinions & Open Government

Morales Opinion No. DM-326





February 13, 2014

5865 1 MB 0.435
***AUTO**MIXED AADC 720 R:5865 T:26 P:30 PC:2 F:357001
DORA A BURNETT
3607 LAUREN TRL
PEARLAND, TX 77581-8851



For Information Only

ᵗᵉᵉᵗᵉˡᵗᵗᵗᵗˡᵗᵗᵗˡᵗˡᵗᵗᵗˡˡᵗᵗˡᵗᵗˡˡˡᵗᵗˡᵗᵗˡˡˡˡ

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

February 13, 2014

5865 1 MB 0.435
***AUTO**MIXED AADC 720 R:5865 T:26 P:30 PC:2 F:357001
PACIFICEMPLOYERSINSURANCECOMPANY
PO BOX 6563
SCRANTON, PA 18505-6563

Beneficiary Name:            BURNETT, DORA A
Medicare Number:            449251813A
Case Identification Number:  20132 05090 00628
Insurer Claim Number:        @290C0900394
Insurer Policy Number:       C42650183
Date of Incident:            March 27, 2000

Dear PACIFICEMPLOYERSINSURANCECOMPANY:

This letter follows a previous letter notifying you of Medicare's priority right to recovery as defined under the Medicare Secondary Payer provision. To date, Medicare has not paid any claims that currently appear related to the beneficiary's pending settlement, judgment, or award for the above referenced incident.

---

NGHP • PO BOX 138832 • OKLAHOMA CITY, OK 73113



EXHIBIT
5





It is possible that Medicare may have paid claims related to the date of incident but may not have been retrieved and/or included for the following reasons: the nature of the injury or illness has not been provided or is incomplete, or all claims have not been submitted by the providers. However, Medicare may pay related claims in the future. Therefore, when the case does settle, please complete the attached, "Final Settlement Detail Document" and return it to us. Upon receipt of the completed documents, we will perform a final search of Medicare claims history and notify you if a refund is due Medicare.

*Please note: If the underlying claim involves ingestion, exposure, implantation, or other non-trauma based injury, Medicare may have excluded the paid claims related to your case. Please contact the Benefits Coordination & Recovery Center (BCRC) immediately with a description of the injury so that we may associate the appropriate claims with the case.*

Should conditional payment information become available, it will be posted under the "MyMSP" tab of the www.mymedicare.gov website. The information at www.mymedicare.gov will be updated weekly with any changes or newly processed claims. If you wish, you may track the medical expenses that were paid by Medicare, and if you have an attorney or other representative, provide him/her with this information. This may help you/ your attorney with finalizing your settlement.

If you have any questions concerning this matter, please contact the Benefits Coordination & Recovery Center (BCRC) by phone at 1-855-798-2627 (TTY/TDD: 1-855-797-2627 for the hearing and speech impaired), in writing at the address below, or by fax to 405-869-3309. When sending correspondence, please include the Beneficiary Name along with the Medicare and Case Identification Numbers (shown above).

Sincerely,

BCRC
Enclosure: Final Settlement Detail Document

CC: DORA A BURNETT
CC:
CC:
CC:

  



# Final Settlement Detail Document

Beneficiary Name:  BURNETT, DORA A
Medicare Number:  449251813A
Date of Incident:  March 27, 2000

When a beneficiary receives a settlement, judgment, award, or other payment, Medicare is entitled to recover associated payments made by the Medicare program. If certain conditions are met, Medicare reduces its conditional payment to take into account a proportionate share of the costs incurred in resolving the beneficiary's claim.  See 42 C.F.R. 411.37.  In general, the recovery demand must be against the individual or entity that received payment, the costs must have been incurred because the matter was disputed, and the costs must be paid by the individual or entity against whom/which Medicare seeks recovery.  There is no proportionate reduction if payment is not in dispute - for example a payment for no-fault insurance.

In order for Medicare to properly calculate the net refund it is due, please supply the information outlined below.  This information will also be used to update the beneficiary's records to show resolution of this matter.  If you have a representative, this information should be submitted by your representative on his/her letterhead.

Total Amount of the Settlement: _____
Total Amount of Med-Pay or PIP: _____
Attorney Fee Amount Paid by the Beneficiary: _____
Additional Procurement Expenses Paid by the Beneficiary: _____
  (Please submit an itemized listing of these expenses)
Date the Case Was Settled: _____/_____/_____
Description of Injuries: _____

This information should be submitted **along with a copy of this notice** to:

    NGHP
    PO BOX 138832
    OKLAHOMA CITY, OK 73113

If you have any questions concerning this matter, please call the Benefits Coordination & Recovery Center (BCRC) at 1-855-798-2627 (TTY/TDD: 1-855-797-2627 for the hearing and speech impaired) or you may contact us in writing at the address above.  If you contact us in writing, please be sure to include the beneficiary's name and his/her Medicare health insurance claim number.

STATE OF TEXAS
COUNTY OF BRAZORIA

I certify that the foregoing is a true and correct
copy of the original record on file in my office.
Given under my hand and seal of the court at
my office in Angleton, Texas.
RHONDA BARCHAK, DISTRICT CLERK

By _____ Deputy

